Last case of the day. Last case is 4-18-0702, Nathan Benson v. Workers' Compensation Commission. Counsel, you may proceed. May it please the court, my name is Bill Schmitz and I represent the College of Nathan Benson v. Schneider. Mr. Schmitz, before you start your argument, can I ask you a question? Do you know what Supreme Court Rule 342 requires in a table of contents for the record on appeal? Do you know what it requires? Oh, no, I do not. Well, as to witness testimony, it requires you to give us the name of the witness where the direct examination starts, where the cross-examination starts, and where any redirect starts. And you're supposed to give, in your table of contents of the record on appeal, you have an entry here, transcript, pages 20-300. Is it my job to search through 280 pages of transcript to find out where all this stuff is at? No, Your Honor. Well, then, you know, I harp on this every time. It's not only for you. But these Supreme Court rules are not advisory suggestions. They're rules. And if you're going to write a brief and present it to us, you should comply with the rules. Because we do have the right to strike the briefs and dismiss appeals for this. So, but... Yes, Your Honor. Just, you know, it makes our life very difficult when you do something like this. Go ahead. I'll keep that in mind going forward. But I have a very fundamental question here. I don't think the facts of that happened here. Obviously, it happened. My first question is, did anyone ever suggest to the claimant or tell him that it was okay to jump off the dock? That is a disputed fact. It is? I thought the claimant admitted that no one ever told him to jump off the dock for Mr. Brown. Nobody told him one way or another. Right. So that's my question. Was it anybody ever tell him or suggest him that was okay? And your answer is no. Correct, Your Honor. Are they required to tell him not to do a thing like this? I would submit no. They are not required to tell him not to do something like this. So, it is clear in the record that he was given his job description, follow all safety protocols. Now, it's not explicitly saying that he should jump off the dock. I mean, I don't think this is a question of follow all safety protocols. This is a question of whether what he did was so outrageous, it took him out of the scope of his employment. And it didn't arise out of the scope of his employment. I suppose if you take this to its logical conclusion, if he decided to get himself fired out of a cannon to get off the loading dock, you'd be arguing that it was in the scope of his employment because he was getting off the dock. Your Honor, the commission correctly noted that this particular decision, the plaintiff's decision in exiting off the side of the loading dock as opposed to taking the stairs, that's not dispositive of whether his exit arose out of his employment. That is dispositive, or at least relevant, as to whether his exit was in the scope or in the course of his employment. Now, the course of his employment doesn't encompass whether or not the act that caused the injury was reasonably to be expected by the employee in the course of completing his assigned duties. So there's no question your claimant is there. He was sent there, he was in the process of performing an authorized act for the employee, correct? Yes, Your Honor. Okay. But tell us why jumping off the loading dock is an act to be reasonably expected. Well, you wouldn't jump out a window. Where do you draw the line here? As the commission noted, the commission noted that the loading dock was not particularly risky. I don't want to... The commission said it wasn't risky? It said that the loading dock was not particularly risky. Now... The dock wasn't...jumping off wasn't risky? I don't think the commission held it was not risky to jump off a dock, really? Then why did they deny compensation? Mr. Benson's decision to exit the loading dock, that decision negligently did not afford to... You know what, you're absolutely correct on that. In addition, violation of safety protocols is not of our... That's why I raised the ridiculous examples. If he decided to get himself shot out of a cannon to get off the loading dock, you'd be arguing that it arose out of his employment. Because getting off the loading dock was supposed to do, and therefore no negligence can possibly depreciate that argument. This case is very similar to the Hines case. I'm sorry to make this brief. Now, in Hines, the employment had locked his keys in a room, and he needed those keys to perform his job duties as a maintenance and security person. Now, although not specifically instructed by his employer to get loaded through a hatchway in order to get his keys out of the locked room, and in that case, that's when he was injured, he did so in order to get the keys so he could carry out the rest of his duties. I think you just hit on the magical distinction there. He needed to get the keys to carry out his duties, or he was stymied from carrying out his duties. He didn't need, in this case, to jump off the dock. It would have taken him another half of a minute to walk down the stairs. Are you telling me he needed to jump off the dock? I'm not telling you he needed to jump off the dock. Now, you're absolutely right. In the Hines case, he didn't need to go get loaded through the hatchway. In fact, he was explicitly instructed by his employer to open the glass key box, contact management if a problem arises, or the last one was to seek out security in order to unlock the door for him so he could get his keys. Now, he did not do any of those things. He took it upon himself to get loaded through the hatchway in order to get his keys and to carry out the rest of his duties. Here, did the plaintiff need to jump off the dock? No. I don't think anybody would say that he needed to do that. Okay, let's get to some definitions now. There's no question that this injury occurred in the course of the employment. The issue was whether it arose out of the employment. And the Supreme Court takes the position that typically an injury arises out of one's employment if at the time of the occurrence the employee was performing acts which he was instructed to perform by his employer. No one told him to jump off the dock, did they? Correct, Your Honor. Acts which he had a common law or statutory duty to perform, not jumping off. Or acts which the employee might reasonably be expected to perform incident to his assigned duties. Was jumping off the thing an act which he might be reasonably expected to perform incident to his duties? He said they saw him before. They said they didn't. And the commission had to decide who was telling the truth. There's been much focus on the specific act of jumping off or the decision to jump off. Well, that was the focus for the commission. That's a mechanism of injury. That was the focus. The act that Mr. Benson was performing on behalf of his employer was hurrying to get gas. Now, in the course of hurrying to get gas so that he could carry out his duties to transport women, similar to the claimant in Hines who, in carrying out his job duties as a maintenance person, went through the hatchway to get his keys. And he was trying to lure himself, in that case, if you want to parse distinctions, he didn't jump into the hatch, did he? He's trying to lure himself into the hatch. Jumping off a dock is a little different than trying to lure yourself into a hatch. Absolutely. And no two factors are exactly the same. I would submit to you that in this case, in particular, an undisputed fact is that Mr. Benson was instructed by his employer to hurry to get gas. But didn't he have an alternative, sir? I mean, seriously, luring into the hatch, the only way that the gentleman in that case could have got the keys, you'd have to admit, was luring himself into the hatch to get the keys. The claimant, in this case, your client didn't need to jump off the dock. He had a very simple alternative that would have taken him 50 seconds longer. Walk down the stairs, right? Right. He didn't have to engage in the act at all to do what he was accomplishing. He didn't have to engage in the act. The claimant in Hines didn't have to lure himself into the hatch. He could have followed his employer's instructions. But he couldn't have got the keys unless he lured himself into the hatch. Not without help from somebody else. But your client could have done the act he wanted to do, that is, get back to ground level without jumping. Yes, he could. I mean, the question is, I understand your argument, but where do we draw the line? I mean, you know, I mean, can a person who's shot at a camera, where do you draw the line? Where do you draw the line? In this case, in particular, that is a hard question, and I don't make the same point. I'm going to tell you where the line can be drawn. But what I can say in this case is the plaintiff was, the act he was carrying out was hurting to get gas. Well, we know that, but he hit on the magic formula. Tell us why this is reasonably to be expected. Yes, he was hurting. Is it reasonably to be expected somebody's going to jump off a dock? That's what you have to convince us about. How is that reasonably expected by the importance of guys going to jump off a dock at any point? It's reasonably expected that he'd be hurting. And by virtue of working on the law... We can answer the question. We know he's going to be hurting, but how is it reasonably expected he's going to jump off of the dock? I can't answer that question. But... Now, if I could, I would. Because you would, give you a better answer. But, even if you can reasonably expect him to jump off the dock, by virtue of working on the dock in the first place, his employment increases risk of falling from the dock. Now, it's undisputed that he could have taken the stairs. He may have been safer to take the stairs. He could have taken 30 more seconds to take the stairs. He didn't. But, negligence is not a bar to... Very similar to the Chadwick case. I think what has been happening... Can I ask you a couple of questions? Absolutely. You want to tell me the page in your brief where you cited Hines, and then tell me the page in your brief where you cited Chadwick? I don't think you're going to find the answers you didn't cite either. The Chadwick case was cited in my reply to respondents. You're not supposed to cite for the first time supports to your reply briefs. I didn't know that. Go ahead. And where did you cite Hines in the reply brief also? Chadwick was on page 7. And Hines, in my reply brief, was cited earlier in the record. It's not in your brief. And if you don't cite something in your brief and you want to tell us about it, you're supposed to file a petition to cite additional authority. We can't look at the cases if you don't cite them to us. So in any event, you're arguing to me that he was instructed to hurry, it's not dispute. And maybe you should be saying that it's probably reasonably expected that being in a hurry, he might take a shortcut and jump off the dock. Is that what you're telling us? The word shortcut also... The cases cited for a shortcut were Seeley, Dodson, and Padfield. None of those cases involve a woman who is acting on behalf of their employer. Now, these shortcut cases do not specifically answer the question of whether the accident arose out of the claimants' employment. Those shortcut cases, because they took a shortcut and a danger for their own personal convenience, off the clock to their personal vehicles, removed their accident either from the sphere of their employment or... No, I'm trying to throw you a softball. Your argument is the employer told him to hurry, told him to get the job done, did not put any restrictions on him, so he thought jumping off the dock was to be expected, right? Is that sort of what you're saying? He may have thought that. I can't say he thought that enough. But he made the decision trying to operate under time constraints. Right. So that should be expected, that he would jump off the dock. Obviously. It could be reasonably expected, but even before getting to reasonably expected, he was performing an act instructed to do by his employer, hurry to get gas... Be careful about that, because if an employer tells him to do something in a hurry, it doesn't open up the door to anything. It still has to fall within the reasonably expected element. Okay? Based on the definitions I've read in case law, an injury arises out of the employment if at the time of the occurrence the employee was performing acts he was instructed to perform by his employer, or acts which the employee might reasonably be expected to perform incident to his assigned duties. So here, his assigned duties, the act he was performing was hurrying to get gas, not whether or not he was jumping off the side of the dock. And rather than the fact that he jumped off the dock, it's a question of whether he was removing himself from the scope of employment or in the course of employment, whether or not he... There's no question he was in the course of his employment. This is a rising out of. Yes, Your Honor. And I see that I am here out of time, but... He has the question of a rising out of his employment. Based on the unsecured facts in this case, by virtue of having to work on a loading dock, traversing multiple times per day, inherently his risk of falling from the loading dock, regardless of the route that he took, is greater than a member of the general public quantitatively, and by virtue of being instructed to hurry by his employer, as in the William C's case, his risk of injury was increased qualitatively. Okay. Your time is up, but you'll have time to respond. Counsel may respond. Please report, Counsel. My name is Nathan Bernard. I represent the employer. We respectfully ask that you affirm the denial of the remission for the accident and volunteer. Justices, you asked where you draw the line. You and our party have done it in Haskell and Dotson. That was the one you asked for. And I would posit that those claims and that situation was absolutely more dispositive and on par than the case decided by Counsel. The Commission, again, and Counsel, didn't misunderstand them. I'd also mention that there were some disputed issues, and if there are disputed issues, then it's a manifest way to argue them. And the Commission correctly noted them in this portion, too. I believe the questions you asked were everything I was going to come up here and say. If you have any questions, otherwise, I'm done. I don't believe that there are. Thank you, Counsel. Counsel, would you choose to reply? Very briefly. Okay. So let me start by just saying that I know that our panel can be intimidating at times, and we got you sidetracked on your original arguments. But when we try and throw you a softball, you need to step back, relax for a moment, and realize it, and just say yes. And so just relax right now, because I can feel your anxiety. Just relax and go ahead and present your argument now. With regards to cases cited in Respondent 3, again, or seen in Dodson and Hatfield, those cases would support whether or not Mr. Benson's accident was in the scope or in the course of his employment. The reason being, if he had taken a shortcut for his own personal convenience, then it would remove his accident from the course of his employment. Here, he was acting on behalf of his employer. More similar to the other cases cited in Plaintiff's Brief, such as the Bill of Parts, Chadwick, and some of the others. Did the commission find he was not in the course of his employment? He did not. So the real issue is, did it arise out of it? Correctly. Okay.  Okay. In order to determine whether his accident arose out of his employment, the key facts in the record, basically undisputed facts under no overview, are that he was hurrying, that he wanted to take a qualitative increased risk, and then that he worked on the loading dock every day of work. Members of the general public do not spend the amount of time he spends on a loading dock. Not just on the loading dock, but traversing up and down the loading dock to transport goods. And the act he was performing overall was to get gas for his employer, so that he could do the rest of his duties and transport goods. So, yes, he made a negligent choice on going off the side of the loading dock, and it was an intentional choice to go that route. That's not disputed. Now, whether or not it had been seen by his supervisors is disputed, so we won't, given that I would ask the court to review this matter de novo and find that Mr. Benson's accident did arise out of his employment because he was performing as his employer instructed him to do. And he was instructed to hurry, get gas. It would be reasonably expected that he would take, even if it's 30 seconds less, perhaps the most direct route. And, finally, his risk of injury was increased quantitatively and qualitatively by the portion of the time he spent there at the loading dock versus the available time of day. And he's in the grave. That's it. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement. Thank you, counsel.